**Albright v. B. & G. Development Company, Inc.**

*William W. Belford, 2d,* for Recorder of Deeds, petitioner.

*Preston L. Davis* of *Davis, Davis & Kaar,* for respondent.

KIVKO, P. J., December 31, 1973.—This matter comes before the court on a petition by Lester Albright, Recorder of Deeds, for a rule on B. & G. Development Company, Inc. (respondent) to show cause why a revised plan for an area in Coal Township, Northumberland County, known as Edgewood Gardens, should not be expunged from the records and indices of his office. The basis for the request is an alleged improper presentation of the plan for recording, the nonpayment of fees and the inclusion of an improper date of recording. An answer was filed denying the improper presentation, admitting the nonpayment of fees but offering to make payment and admitting the erroneous date of recording and requesting the reformation of that date.

After hearing held and due consideration of the testimony taken, the court makes the following

## FINDINGS OF FACT

On June 20, 1966, respondent filed and there was entered of record in the office of the recorder of deeds a plan for a subdivision in Coal Township named Edgewood Gardens. The subdivision consisted of four sections known as A, B, C and D. Respondent subsequently sold a parcel in section A consisting of one full lot and 10 feet of an adjoining lot. Other parcels of section A sold thereafter were for a full width of the lots shown in the plan but, because of the encroachment of the 10 feet referred to, the parcels were described as parts of two lots, that is, the remaining portion of one lot from which 10 feet had been conveyed plus 10 feet of an adjoining lot.

To avoid a continuation of a similar pattern in deed descriptions for the lots in section B which adjoined section A, a revised plan of section B, dated November 30, 1967, was prepared. The lot lines were changed by moving them 10 feet westward within the limits permissible and making them contiguous with the lines of the parcels proposed to be sold. In addition, certain changes were made in the lines of lot no. 5 in section B, rounding what was formerly an angular corner.

Mr. Jack Bitterman, respondent's president, thought the revised plan was recorded when prepared, but it was not. The lack of recording came to light in June 1972, when title to lot no. 5 in section B was being searched by an attorney for a lending institution intending to grant a mortgage loan to a purchaser of the lot. The description in the deed followed the revised plan. It was not in accord with the recorded, the original, plan.

Mr. Bitterman, upon checking his records, found the revised plan, as yet unrecorded. He also found a revised plan of section C, also prepared and dated in 1967, unrecorded. He was employed at the time in the

Northumberland County Courthouse and shared in a pool type of transportation to and from the courthouse with several other county employes, including Mr. Chester Walborn, an employe in the office of the recorder. After becoming aware that the revised plans of sections B and C were unrecorded, Mr. Bitterman, while on his way to the courthouse with Mr. Walborn, asked him to record them. Mr. Walborn accepted them for this purpose. On the return trip that evening, Mr. Bitterman asked Mr. Walborn about the recording fee and was told that since this was just a revision of a plan already recorded, no recording fee would be charged. Mr. Bitterman assumed then that the revised plans were recorded.

Mr. Walborn, however, intending to first ask the recorder or deputy recorder about the absence of the date in a space provided for such above some signatures appearing on the plans, placed them in a box in the vault room of the recorder's office and forgot about them. He was subsequently asked by the attorney making the title search whether the papers had been recorded. He said they were not but that they would be and promptly proceeded to stamp them and place them in the map book. He then told the attorney and Mr. Bitterman that the papers were recorded.

Mr. Walborn stamped the plans and entered them in the map book on July 21, 1972. The date shown on the records, however, was December 12, 1967. Mr. Walborn stated that he inserted such a date because the plans showed on their face that the subdivision was laid out in 1967. Neither Mr. Bitterman nor anyone else had discussed dates with him or, directly or by implication, indicated that the date on the plans should be other than the actual date of recording.

Mr. Walborn had been employed in the recorder's office for over 15 years. His usual duties were to index

and photostat deeds, mortgages, maps and other papers filed in the office. This was done in the vault or "inside" room. Papers were usually received in the "outside" room. At times, usually on Saturday mornings, Mr. Walborn worked in the "outside" room and received, checked, stamped and made entries of documents that were filed for purposes of recording. From there they were taken to the "inside" room for further processing. Mr. Walborn had carried and delivered papers to the courthouse for others on prior occasions. So had the deputy recorder. The fee for the recording of the revised plans was $12. Respondent had never refused and is now willing to pay whatever charge may be due for this service.

## DISCUSSION

The first question to be considered is whether the court has jurisdiction over this matter. We answer that affirmatively. A court has inherent powers to correct its records: Davis v. Commonwealth Trust Co., 335 Pa. 387 (1939). A recorder has authority, without a court order, to correct errors in his records where the erroneous matter consisted of a marginal reference which was not required by law to be included: Commonwealth v. Hudson, 350 Pa. 626 (1944). But for matters of greater substance, such as the correction of a date of the recording of an instrument, application should be made to the court: Altoona Trust Co. v. Fockler, 311 Pa. 426, 435 (1933). See York Ice Machinery Corporation v. Kearney, 344 Pa. 659 (1942).

Petitioner contends that since the path of respondent's revised plans in the recorder's office was not that followed by the bulk of papers recorded, they were "improperly presented" and must be removed from the record. This implies that there is a required procedure or path which a paper must follow to be recorded. No statutory law, case law or established

custom has been shown or found which would support that position.

There was nothing improper in Mr. Bitterman's asking Mr. Walborn during their ride to the courthouse to carry the papers into the recorder's office and place them in the proper course of events to end up in the proper location, duly indexed, or in Mr. Walborn's accepting them for that purpose. In that respect, Mr. Walborn was no different from an attorney delivering papers for a client or from any person delivering papers to the courthouse for another. He was serving as respondent's agent in carrying the papers to be recorded. When, however, he told the attorney making the title search that he would record the papers, picked them up, stamped them and placed them in the book, he was acting in another capacity, that of a clerk in the recorder's office. He had recorded papers on many prior occasions and in recording these papers, he was acting as an agent of the recorder within the scope of his authority. That he may not at the time have been acting in the ordinary course of his duties would not invalidate the recording.

The expunging of papers from the records requires consideration of more than simply the integrity of the records and the position of respondent. Once the papers appeared in the proper place in the recorder's records, others may have relied upon them. That reliance cannot be lightly disregarded.

An instrument may be properly of record though it contains a latent defect: Angier v. Schieffelin, 72 Pa. 106 (1872); Scott v. Penn Title Insurance Co., 10 D. & C. 2d 129 (1956). The reasons are twofold: first, the recorder is not responsible for investigating the validity of documents, and, second, because once documents appear of record it may be difficult or impossible to determine who may have relied upon the record as it appears. Of course, the corollary is that if the

defect affects rights of private individuals, their rights are not altered by the recording if they know the actual defects.

In the case before us, no one can be certain who may have acted on the basis of the plans as they appeared in the proper records of the recorder. To expunge them from the record, for the reasons submitted by petitioner without someone who so relied being a party to the action, we deem to be improper as well as unnecessary.

Petitioner next contends that the record should be expunged because no fee was paid. There is no dispute, however, that a question was asked as to the amount of the fee and the response received was that none was required. It was not shown by testimony or otherwise in statutory law, case law or clearly established custom that prepayment is a requisite for proper recording. Respondent has tendered a check in the proper amount. There is no apparent harm to anyone if payment is accepted now. Expunction would be an unreasonable remedy.

Petitioner's final contention in support of his petition is that the date of the recording is erroneous. There is nothing in the testimony to indicate that respondent was in any way responsible for this. The reason for the misstatement of the date is not clear, but apparently it was a misguided attempt to aid someone with no intent to harm anyone. On this issue, the matter of reliance was dual. No one could have relied upon the revised plans before they actually appeared of record. However, thereafter, the problem of reliance by others discussed above arises.

The remedy is not by expunction. The mistake can be rectified and the integrity of the records preserved by reforming the record so as to reflect the proper date of recording, July 21, 1972.

We, therefore, enter the following

## ORDER

And now, December 31, 1973, it is ordered and directed that:

1. Petitioner, Lester Albright, Recorder of Deeds for Northumberland County, Pa., accept from the respondent, B. & G. Development Company, Inc., the sum of $12 tendered in payment of the fee for services performed in the recording of the revised plan of Edgewood Gardens, Sections B and C, in Map Book 2, Page 8(a):

2. The Recorder of Deeds correct his records to show that said revised plan was recorded on July 21, 1972, and not on December 12, 1967; and

3. All other issues raised by the petition and rule entered thereon are dismissed.